[Cite as *Midland Funding, L.L.C. v. Colvin*, 2019-Ohio-5382.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

MIDLAND FUNDING LLC,

    PLAINTIFF-APPELLEE,                CASE NO. 5-18-15

    v.

CASSANDRA COLVIN,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013-CV-459

Judgment Reversed and Cause Remanded

Date of Decision:  December 30, 2019

APPEARANCES:

    *Ronald I. Frederick and Gregory S. Reichenbach* for Appellant

    *H. Toby Schisler* for Appellees, Midland Funding LLC, Midland
        Credit Management, Inc., and Encore Capital Group, Inc.

**PRESTON, J.**

{¶1} Defendant/counterclaim-plaintiff/third-party-plaintiff-appellant. Cassandra Colvin ("Colvin"), appeals the June 12, 2018 judgment of the Hancock County Court of Common Pleas denying her motion for class certification. For the reasons that follow, we reverse.

{¶2} On April 22, 2013, plaintiff/counterclaim-defendant-appellee, Midland Funding LLC ("Midland"), filed a complaint against Colvin in the Hardin County Municipal Court. (Doc. No. 8). Midland alleged that Colvin had defaulted on a Chase Bank credit-card account, that it had purchased Colvin's delinquent account from Chase Bank, and that, despite Midland's informal efforts to collect the amount owing, Colvin failed to pay the balance due. (*Id.*). Midland requested judgment against Colvin in the amount of $950.60 along with other related relief. (*Id.*).

{¶3} On June 5, 2013, Colvin filed a motion to dismiss Midland's complaint. (*Id.*). In her motion, Colvin alleged that she "lives in Hancock County, Ohio, and has never lived in Hardin County, Ohio." (*Id.*). In addition, she noted that Midland "made no allegation that there was any contract signed in Hardin County, or any other connection to Hardin County." (*Id.*). Colvin thus argued that the Hardin County Municipal Court did not have subject-matter jurisdiction over Midland's action because Midland's action did not have a territorial connection to the court.

(*Id.*).  On June 14, 2013, Midland filed a memorandum in opposition to Colvin's motion to dismiss.  (*Id.*).

{¶4} On June 27, 2013, the Hardin County Municipal Court issued its ruling on Colvin's motion to dismiss.  (*Id.*).  The court found that Colvin "at all times relevant lived in Hancock County, Ohio" and that "there does not appear to be any nexus to the territory over which [the Hardin County Municipal Court] has jurisdiction."  (*Id.*).  However, the court did not dismiss Midland's action outright.  (*Id.*).  Instead, the court transferred Midland's action to the Findlay Municipal Court at Midland's cost.  (*Id.*).

{¶5} On September 3, 2013, after the case had been transferred to the Findlay Municipal Court, Colvin filed a combined answer to Midland's complaint, counterclaim against Midland, and third-party complaint adding third-party-defendants-appellees, Midland Credit Management, Inc. ("Midland Credit") and Encore Capital Group, Inc. ("Encore"), as third-party defendants.[1]  (*Id.*).  In her counterclaim and third-party complaint, Colvin alleged that the Midland parties violated the federal Fair Debt Collection Practices Act ("FDCPA") when Midland filed suit against her in the Hardin County Municipal Court because she did not reside within the territorial jurisdiction of the Hardin County Municipal Court at the time Midland filed its complaint and she did not sign the contract underlying her

---

[1] Midland, Midland Credit, and Encore will hereafter be referred to collectively as the "Midland parties."

-3-

alleged debt to Chase Bank within the territorial jurisdiction of the Hardin County Municipal Court.[2] (*Id.*). *See* 15 U.S.C. 1692i(a). Colvin further maintained that the Midland parties "regularly file[] collection actions against Ohio residents in counties where the defendant does not live and did not sign a contract, including * * * instances where [the Midland parties] used the city or village of defendants' postal address without determining the physical location of the address," in violation of the FDCPA. (Doc. No. 8). Accordingly, Colvin asserted claims on behalf of a class of plaintiffs who were injured by the Midland parties' alleged violations of the FDCPA. (*Id.*). Colvin referred to this class of plaintiffs as the "FDCPA Class."[3] (*Id.*). Colvin requested a declaration that the Midland parties violated the FDCPA when they brought suit against class members in improper venues, actual and statutory damages as provided for by 15 U.S.C. 1692k(a)(1)-(2), and costs of the action and reasonable attorney's fees as provided for by 15 U.S.C. 1692k(a)(3). (*Id.*).

{¶6} The same day that Colvin filed her answer, counterclaim, and third-party complaint, Colvin filed a motion to transfer the case to the Hancock County

---

[2] Although Midland was the only plaintiff named in the complaint filed against Colvin in the Hardin County Municipal Court, Colvin alleges that Midland, Midland Credit, and Encore "operate as a de facto single business interest, and jointly plan all significant operations and business activities, including but not limited to, debt collection and litigation of collection lawsuits in Ohio * * *." (Doc. No. 8). The Midland parties have vigorously disputed this assertion throughout the proceedings. (*See* Appellees' Brief at 3).

[3] The definition of this class changed between the filing of Colvin's counterclaim and third-party complaint and the filing of her motion for class certification. To avoid confusion, we will introduce only the definition of the class that Colvin included in her motion for class certification.

Court of Common Pleas. (Doc. No. 8). On September 5, 2013, the Findlay Municipal Court granted Colvin's motion to transfer, and the case was subsequently transferred to the Hancock County Court of Common Pleas. (*Id.*).

{¶7} On November 7, 2013, the Midland parties filed their joint answer to Colvin's counterclaim and third-party complaint. (Doc. No. 20). On December 5, 2013, the Midland parties filed their amended joint answer to Colvin's counterclaim and third-party complaint. (Doc. No. 23).

{¶8} In March 2015, Colvin moved to consolidate her case with case number 2015-CV-94, *Caitlin Gilbert v. Midland Funding LLC* ("*Gilbert*"). *See Gilbert v. Midland Funding, L.L.C.*, 3d Dist. Hancock No. 5-19-11, 2019-Ohio-5295, ¶ 5. On May 21, 2015, the trial court ordered that Colvin's case be consolidated with *Gilbert* for purposes of discovery. *Id.*

{¶9} On November 30, 2015, Colvin moved for leave to file an amended counterclaim/third-party complaint. (Doc. No. 68). On December 28, 2015, the Midland parties filed a memorandum in opposition to Colvin's motion for leave to file an amended counterclaim/third-party complaint. (Doc. No. 71). On January 15, 2016, the trial court granted Colvin's motion. (Doc. No. 73). On February 22, 2016, Colvin filed her amended counterclaim/third-party complaint. (Doc. No. 78). On March 4, 2016, the Midland parties filed their answer to Colvin's amended counterclaim/third-party complaint. (Doc. No. 79).

{¶10} On June 1, 2017, Colvin filed a motion for class certification. (Doc. No. 106). Colvin sought to certify one class defined as:

a. All persons who have been sued in Ohio Courts by [the Midland parties] from April 22, 2012 until the time this class is certified;

b. where the address on the face of the complaint and/or the address at which the Defendant was served are not within the geographical limits of the court where the suit was filed; or

c. where [the Midland parties] filed suit in a court where the contract was not signed; and

d. the debt alleged by [the Midland parties] was incurred for personal, family or household use.[4]

(*Id.*). On June 22, 2017, the Midland parties filed their memorandum in opposition to Colvin's motion for class certification.[5] (Doc. No. 107). On July 14, 2017, Colvin filed a reply in support of her motion for class certification. (Doc. No. 108). On July 20, 2017, the Midland parties filed a reply memorandum in support of their motion to strike Colvin's class claims. (Doc. No. 109).

---

[4] While Colvin did not denominate it as such in her motion for class certification, the class Colvin attempts to certify shares a number of similarities with the "FDCPA Class" proposed in her complaint. (*See* Doc. No. 8).

[5] The Midland parties had earlier filed a motion to strike Colvin's class claims on May 30, 2017. (Doc. No. 105). In their memorandum in opposition to Colvin's motion for class certification, the Midland parties requested that the trial court treat their motion to strike as part of their response to Colvin's motion for class certification "to the extent the Court does not grant the Motion to Strike." (Doc. No. 107).

{¶11} On June 12, 2018, the trial court denied Colvin's motion for class certification. (Doc. No. 115). The trial court first concluded that the proposed class definition is unambiguous, that the proposed class is sufficiently numerous, and that Colvin is a member of the proposed class. (*Id.*). However, the trial court held that class certification is inappropriate because there are not questions of law or fact common to the class, Colvin's claims and defenses are not typical of the claims and defenses of the proposed class, and Colvin cannot fairly and adequately protect the interests of the proposed class. (*Id.*). *See* Civ.R. 23(A)(2)-(4). Because the trial court concluded that Colvin and the proposed class fail to satisfy Civ.R. 23(A)'s commonality, typicality, and adequacy-of-representation requirements, it did not conduct an analysis to determine whether the proposed class satisfies the requirements of Civ.R. 23(B)(3). (*Id.*).

{¶12} On July 11, 2018, Colvin filed a notice of appeal. (Doc. No. 116). She raises two assignments of error for our review.

### Assignment of Error No. I

**The Trial Court abused its discretion in denying Ms. Colvin's motion for class certification based on the incorrect premise that her claims were not common or typical of the purported class and that she was not an adequate representative, because she has differing damages.**

{¶13} In her first assignment of error, Colvin argues that the trial court abused its discretion by denying her motion for class certification. Colvin contends

that the entire basis of the trial court's conclusion that Civ.R. 23(A)'s commonality, typicality, and adequacy-of-representation requirements are not satisfied was the trial court's belief that, because she is seeking only statutory damages under the FDCPA, she cannot represent class members with claims for both actual damages and statutory damages. (Appellant's Brief at 6). She argues that the trial court was mistaken and that "Civ.R. 23 permits class certification despite differing damages among class members and, in the FDCPA setting, permits a class member claiming only statutory damages to represent members claiming both statutory and actual damages." (*Id.*). Thus, Colvin maintains that the trial court should have found the commonality, typicality, and adequacy-of-representation requirements satisfied with respect to the entire proposed class.

{¶14} "Civ.R. 23 sets forth the requirements for maintaining a class action." *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, ¶ 6 ("*Stammco I*"). The Supreme Court of Ohio has identified seven requirements that a litigant must satisfy in order to maintain a class action under Civ.R. 23:

"(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative

parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met."

*Id.*, quoting *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71 (1998), citing Civ.R. 23(A) and (B) and *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91 (1988). The party moving for class certification must prove each of these seven requirements by a preponderance of the evidence. *Gordon v. Erie Islands Resort & Marina*, 6th Dist. Ottawa No. OT-15-035, 2016-Ohio-7107, ¶ 26, citing *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 15; *MidFirst Bank v. Biller*, 3d Dist. Seneca No. 13-10-13, 2010-Ohio-6067, ¶ 18, citing *Robinson v. Johnston Coca-Cola Bottling Group, Inc.*, 153 Ohio App.3d 764, 2003-Ohio-4417, ¶ 2 (1st Dist.) and *State ex rel. Ogan v. Teater*, 54 Ohio St.2d 235, 247 (1978). "'The failure to meet any one of these prerequisites will defeat a request for class certification * * *.'" *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 24 ("*Stammco II*"), quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984).

{¶15} "'A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion.'" *Id.* at ¶ 25, quoting *Marks v. C.P. Chem. Co.,*

*Inc.*, 31 Ohio St.3d 200, 201 (1987). "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Hamilton* at 70. "'Abuse of discretion has been defined as more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.'" *Stammco II* at ¶ 25, quoting *Marks* at 201, citing *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232 (1984). "'A finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously.'" *Id.*, quoting *Marks* at 201.

{¶16} However, the trial court's discretion, while expansive, "'is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied.'" *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, ¶ 20, quoting *Hamilton* at 70.

{¶17} In this action, Colvin maintains that the Midland parties' litigation activities against putative class members violated the FDCPA. "Congress enacted the FDCPA * * * to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and

to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577, 130 S.Ct. 1605 (2010), citing 15 U.S.C. 1692(e). "Forum abuse," "an unfair practice in which debt collectors seek to obtain default judgments by filing suit in courts so distant or inconvenient that consumers cannot make an appearance," was one such debt collection practice that concerned Congress. *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, ¶ 72, citing *Stratton v. Portfolio Recovery Assocs., L.L.C.*, 770 F.3d 443, 449-450 (6th Cir.2014). As explained by the Seventh Circuit Court of Appeals:

Consumer debts covered by the [FDCPA] are usually too small to justify a lawsuit unless the suit is promptly defaulted, thereby enabling the debt collector to obtain—without incurring significant litigation cost—a judgment that it can use to garnish the debtor's wages. * * * [O]ne common tactic for debt collectors is to sue in a court that is not convenient to the debtor, as this makes default more likely; or in a court perceived to be friendly to such claims; or, ideally, in a court having both of these characteristics. In short, debt collectors shop for the most advantageous forum. By imposing an inconvenient forum on a debtor who may be impecunious, unfamiliar with law and legal processes, and in no position to retain a lawyer (and even if he can

afford one, the lawyer's fee is bound to exceed the debt itself), the debt collector may be able to obtain through default a remedy for a debt that the defendant doesn't actually owe.

*Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 638-639 (7th Cir.2014). Accordingly, Congress included a "fair-venue" provision in the FDCPA to combat abusive forum shopping. *Taylor* at ¶ 72. *See* 15 U.S.C. 1692i. Under the FDCPA's fair-venue provision, unless the "debt"[6] sued on is secured by real estate, a "debt collector"[7] who brings any legal action on a debt against a "consumer"[8] must "bring such action only in the judicial district or similar legal entity—(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C. 1692i(a)(2). If a debt collector fails to comply with the FDCPA's fair-venue provision, the debt collector may be liable to the consumer or consumers for:

> (1) any actual damage sustained by such person [or persons] as a result of such failure;

---

[6] "Debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. 1692a(5).

[7] Subject to a number of exclusions, "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

[8] "Consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3).

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B)  in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3)  in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. 1692k(a).  *See Suesz* at 639.

{¶18} In its judgment denying Colvin's motion for class certification, the trial court concluded that the proposed class is identifiable, unambiguously defined, and sufficiently numerous.  (Doc. No. 115).  The trial court also concluded that Colvin is a member of the proposed class.  (*Id.*).  None of these conclusions is before this court for review.  Instead, in this appeal, Colvin argues only that the trial court abused its discretion by concluding that the commonality, typicality, and adequacy-of-representation prerequisites to class certification are not satisfied.  *See* Civ.R. 23(A)(2)-(4).  Accordingly, we focus solely on these three prerequisites to class certification.

{¶19} We begin with commonality. Civ.R. 23(A)(2)'s commonality requirement "involves scrutinizing class claims for a 'common nucleus of operative facts, or a common liability issue.'" *Barrow v. New Miami*, 12th Dist. Butler No. CA2015-03-043, 2016-Ohio-340, ¶ 28, quoting *Hamilton*, 82 Ohio St.3d at 77; *Pivonka v. Sears*, 8th Dist. Cuyahoga No. 106749, 2018-Ohio-4866, ¶ 58, appeal accepted, 155 Ohio St.3d 1412, 2019-Ohio-1205. "The commonality requirement 'does not demand that all the questions of law or fact raised in the dispute be common to all the parties.'" *Pivonka* at ¶ 59, quoting *Marks*, 31 Ohio St.3d at 202. *See Berdysz v. Boyas Excavating, Inc.*, 8th Dist. Cuyahoga No. 104001, 2017-Ohio-530, ¶ 28 ("[T]here need not be a complete identity of claims among all class members * * *."). "'Although there may be differing factual and legal issues, such differences do not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority.'" *Pivonka* at ¶ 59, quoting *Marks* at 202.

{¶20} "'Commonality may be found where the basis for liability is common to the proposed class or where a common factual question exists on issues of negligence, breach of contract, illegal practice, or other applicable causes of action[.]'" *Berdysz* at ¶ 29, quoting *Grant v. Becton Dickinson & Co.*, 10th Dist. Franklin No. 02AP-894, 2003-Ohio-2826, ¶ 36. "'Courts generally have given a

permissive application to the commonality requirement in Civ.R. 23(A)(2).'" *Pivonka* at ¶ 58, quoting *Warner*, 36 Ohio St.3d at 97-98.

**{¶21}** In determining that the proposed class fails to satisfy the commonality requirement, the trial court observed:

> [T]here are different questions of law and facts between Colvin and the proposed class members. Colvin's suit was transferred to the correct jurisdiction after it was shown that the original suit was improperly filed and is still pending. Colvin has not had judgment rendered against her or been subject to any collection efforts. These facts do not match the majority, if any, of the proposed class members. Despite Colvin's contentions, it is not the difference in possible damages alone that make her different from the rest of the proposed class members. Significant factual differences exist between her situation and the rest of the class.

(Doc. No. 115).

**{¶22}** We conclude that the trial court erred when it decided that the proposed class fails to satisfy the commonality requirement. First, we note that, at least for purposes of determining whether the proposed class satisfies the commonality requirement, the trial court should not have compared Colvin's individual circumstances to the circumstances of absent members of the proposed

class. "Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001), citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000). Thus, the trial court's examination of the differences between Colvin and absent class members should have been reserved for its analysis of the typicality requirement.

{¶23} More importantly, the particular dissimilarities between Colvin and other members of the proposed class identified by the trial court are not meaningful at this stage in the class-certification analysis. While the trial court found that "[s]ignificant factual differences exist between [Colvin's] situation and the rest of the class," it failed to pinpoint any of these differences, other than noting that Midland's action against Colvin was transferred from the allegedly improper venue, that judgment has not been entered against Colvin, and that she has not had her wages or bank account garnished. (Doc. No. 115). The differences the trial court highlighted are relevant only to a determination of the damages to which Colvin may be entitled as compared to the damages to which absent class members may be entitled. For purposes of the fair-venue provision, "'the violation and injury occurs as soon as the debt collector brings the lawsuit in the improper forum, in other words the moment the complaint is filed.'" *Hill v. Freedman Anselmo Lindberg, LLC*,

N.D.Ill. No. 14 C 10004, 2015 WL 2000828, *2 (May 1, 2015), quoting *Komisar v. Blatt, Hasenmiller, Leibsker & Moore LLC*, N.D.Ill. No. 14 C 7948, 2015 WL 427845, *2 (Jan. 29, 2015); *McInerney v. Roosen Varchetti & Olivier PLLC*, E.D.Mich. No. 17-10037, 2017 WL 4778724, *4 (Oct. 23, 2017) ("By its terms, a violation of [1692i] occurs when a lawsuit is initiated in an improper venue."). *Contra Orellana-Sanchez v. Pressler & Pressler, LLP*, D.N.J. No. 12-6309, 2015 WL 532517, *6 (Feb. 6, 2015) ("[A] violation does not arise under § 1692i(a)(2) until the alleged debtor receives notice of the suit and is forced to respond."). Therefore, provided that the Midland parties did in fact file suit against Colvin and the rest of the proposed class in improper venues, Colvin and the rest of the proposed class suffered the exact same, complete injury as soon as suit was filed against them.

{¶24} Although absent members of the proposed class may have incurred litigation expenses that they would not otherwise have incurred had suit been filed against them in the correct venue or paid money to the Midland parties to satisfy judgments entered against them in improper venues, because each member of the proposed class allegedly sustained an identical injury, these potential differences between Colvin and absent class members pertain only to the *severity* of the injuries suffered and, accordingly, to the damages to which absent class members may be entitled for more-severe injuries as compared to the damages to which Colvin may be entitled for her apparently less-severe injury. Ultimately, "'a trial court should

not dispose of a class certification *solely* on the basis of disparate damages'" as the trial court appears to have done in this case. (Emphasis added.) *Hamilton*, 82 Ohio St.3d at 81, quoting *Ojalvo*, 12 Ohio St.3d at 232. In any event, the issue of differing damages is more appropriately addressed in the analysis of Civ.R. 23(B)(3)'s predominance and superiority requirements. *See Marks*, 31 Ohio St.3d at 202.

{¶25} By focusing on the shared attributes of the proposed class, rather than the differences between Colvin and the rest of the class, we have little difficulty concluding that the proposed class satisfies the commonality requirement. As discussed in the previous paragraph, Colvin and the rest of the proposed class allegedly suffered the same injury when the Midland parties filed suit against them in supposedly improper venues. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350, 131 S.Ct. 2541 (2011) ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury * * *.'"), quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364 (1982). Moreover, the basis for liability, 15 U.S.C. 1692i and 1692k, is common to the entire class.

{¶26} Furthermore, Colvin has sufficiently alleged that the Midland parties have engaged in a pattern of filing suit against class members in jurisdictions where class members did not reside at the time suit was filed and where class members did not sign the contracts underlying their alleged debts. Colvin has also satisfactorily alleged that a common practice is responsible for the Midland parties' alleged

violations of the FDCPA—the Midland parties' use of an alleged debtor's street address to decide where to file suit without determining whether the street address is within the territorial jurisdiction of the court where suit is filed or whether the alleged debtor signed the contract underlying their alleged debt within that court's territory. (*See* Doc. Nos. 78, 106). She further contends that the "system or systems [the Midland parties] use[] to verify addresses regularly cause suits to be filed in the wrong jurisdiction" despite the availability of systems that can determine the exact physical location of a given street address, i.e., the specific political subdivision in which a street address is located, thereby preventing violations of the FDCPA's fair-venue provision. (*See* Doc. Nos. 78, 113).

{¶27} Therefore, the common question of fact is whether the Midland parties actually filed suit against Colvin and the rest of the class in jurisdictions in which Colvin and other class members did not reside at the time suit was filed and in which they did not sign any contract underlying their alleged debts; the common issue of law is whether the Midland parties' pattern of filing suit in such jurisdictions, if proven, resulted in violations of the FDCPA. *See Tedrow v. Cowles*, S.D.Ohio No. 2:06-cv-637, 2007 WL 2688276, *6-7 (Sept. 12, 2007); *Holloway v. Pekay*, N.D.Ill. No. 94 C 3418, 1995 WL 736925, *2 (Dec. 11, 1995). "These questions of law and fact are central to [Colvin's] and to the proposed class'[s] claims, * * * and resolution of them will unquestionably affect a significant number of the proposed

class." *Tedrow* at *7, citing *Sprague v. Gen. Motors. Corp.*, 133 F.3d 388, 397 (6th Cir.1998). Consequently, we are satisfied that the proposed class meets the commonality requirement of Civ.R. 23(A)(2).

{¶28} Having concluded that the trial court erred by determining that the proposed class fails to satisfy the commonality requirement, we now consider whether the trial court erred by holding that Colvin's claims and defenses are not typical of the claims and defenses of the proposed class. Civ.R. 23(A)(3)'s typicality requirement "serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 484 (2000). Claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and if they "are based on the same legal theory." *Id.* at 485. "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton*, 82 Ohio St.3d at 77. "'When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Baughman* at 485, quoting 1 Newberg, Class Actions, Section 3.13, at 3-74 to 3-77 (3d Ed.1992).

{¶29} With respect to typicality, the trial court concluded:

As with commonality, Colvin fails to meet [the typicality] prong. Her claim is limited to the actions of Midland filing a complaint against her in the wrong jurisdiction, a problem later rectified. In comparison, other potential class members have had judgments taken against them and been subject to collection activities. Their range of potential damages far exceeds those of Colvin. Colvin argues that her different circumstances are no bar to representation of the class because her claim arises out of the same conduct by [the Midland parties] as all other class members. Despite her arguments and citations to the contrary, it is clear that her injury is different than the rest of the class members, irrespective of the fact that she meets the class definition.

(Doc. No. 115).

{¶30} We conclude that the trial court erred by determining that Colvin cannot satisfy the typicality requirement. In its typicality analysis, the trial court committed an error similar to the one it made in its examination of the commonality requirement—concluding that Colvin's alleged injury is different from the alleged injuries of the rest of the class members. As explained in our analysis of the commonality requirement, the injury suffered by an alleged debtor due to a violation of the FDCPA's fair-venue provision is complete as soon as a complaint is filed

-21-

against the alleged debtor in an improper venue. Being sued in an improper venue *is* the injury. Any developments subsequent to the filing of a complaint in an improper venue, such as the action being transferred to a proper venue or the action proceeding to final judgment in the improper venue, do not change the fundamental nature of the injury. Therefore, Colvin's alleged injury is not atypical of the injuries allegedly suffered by the rest of the class just because Midland's action against her was eventually transferred to a proper venue or because she has not had judgment entered against her.

{¶31} However, while the trial court incorrectly determined that Colvin's alleged injury is different from the injuries allegedly sustained by the rest of the class, the trial court correctly observed that the "range of potential damages [for absent class members] far exceeds those of Colvin." (Doc. No. 115). As Colvin concedes, because Midland's action against her was quickly transferred and because she has not had judgment entered against her, she seeks only statutory damages for herself. (Appellant's Brief at 3); (Doc. No. 106). As a result, her individual potential recovery is capped at $1,000—a sum that is considerably less than the potential recoveries of those class members with actual damages. *See* 15 U.S.C. 1692k(a). Nevertheless, the fact that Colvin is personally seeking only statutory damages, rather than actual damages and statutory damages, does not make her claims atypical of the class.

**{¶32}** "The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir.1998), citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997) and *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir.1982); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir.2009), quoting *Fed. Home Loan Mtge. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007), citing 15 U.S.C. 1692k(a). "In other words, the Act is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." *Keele* at 593-594. As long as the class representative's and class members' injuries arise out of the same conduct violative of the FDCPA, the class representative can represent a class of plaintiffs with both actual and statutory damages even if the representative can claim only statutory damages. *Id.* at 594. Hence, the fact that Colvin is not seeking actual damages does not itself render her claims atypical of the claims of class members who may be entitled to actual damages. *Irwin v. Mascott*, 96 F.Supp.2d 968, 977 (N.D.Cal.1999); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 679 (N.D.Cal.2011); *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 184-185 (D.Minn.2009); *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 310 (D.Conn.2004); *Wyatt v. Creditcare, Inc.*, N.D.Cal. No. 04-03681-JF, 2005 WL 2780684, *4 (Oct. 25, 2005), citing *Keele* at 593. Colvin's "interest in establishing that [the Midland parties']

conduct violated the FDCPA * * * is not diminished by the type or amount of damages available for recovery." *Wyatt* at *4.

{¶33} Still, the Midland parties contend that other differences between Colvin and the rest of the proposed class make Colvin atypical of the class. The Midland parties argue that Colvin cannot satisfy the typicality requirement because she is subject to defenses that are different from the defenses of absent members of the proposed class. (Appellees' Brief at 10-11). They maintain that "[t]he impact of the res judicata defense from prior lawsuits between the Midland Parties and the proposed class members would, by itself, create atypical circumstances sufficient to preclude class certification." (*Id.* at 10). The Midland parties also suggest that the FDCPA's bona fide error defense is "in play for Colvin's individual claim" and "may be inapplicable to the circumstances of potential class members."

{¶34} The Midland parties' arguments are without merit. "'The defenses * * * of the class representatives must be typical of the defenses * * * of the class members.'" *Baughman*, 88 Ohio St.3d at 485, quoting *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 64 (1990). However, "'*[t]hey need not be identical.*'" (Emphasis sic.) *Id.*, quoting *Project Jericho* at 64. "'[A] unique defense will not destroy typicality * * * unless it is "so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members."'" *Id.* at 487, quoting *Hamilton*, 82 Ohio St.3d at 78,

quoting 5 Moore, *Federal Practice*, Section 23.25[4][b][iv], at 23-126, and Section 23.24[6], at 23-98 (3d Ed.1997).

{¶35} Here, the res judicata and bona fide error defenses are unlikely to preoccupy Colvin to the detriment of the rest of the proposed class. Concerning the defense of res judicata, the Midland parties rightly point out that the defense is almost certainly inapplicable to Colvin because the action originally filed in the Hardin County Municipal Court by Midland against Colvin has not yet resulted in a final judgment. (*See* Doc. Nos. 105, 109); (Appellees' Brief at 7, 10). However, while Colvin is probably not subject to the defense of res judicata, she is not atypical of the class because the defense is likely inapplicable to many, if not the majority, of the members of the proposed class.

{¶36} """The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.""" *Crown Chrysler Jeep, Inc. v. Boulware*, 10th Dist. Franklin No. 15AP-162, 2015-Ohio-5084, ¶ 18, quoting *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, ¶ 27, quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 6. The concept germane to this case, claim preclusion, "'prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.'"

*Id.*, quoting *Schachter* at ¶ 27. "'The previous action is conclusive for all claims that were or that could have been litigated in the first action.'" *Id.*, quoting *Schachter* at ¶ 27.

{¶37} "[T]he Ohio Supreme Court has identified four elements necessary to bar a claim under the doctrine of res judicata: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action." *State ex rel. Dept. of Edn. v. Ministerial Day Care*, 8th Dist. Cuyahoga No. 103685, 2016-Ohio-8485, ¶ 14, citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, ¶ 84, quoting *Hapgood v. Warren*, 127 F.3d 490, 493 (6th Cir.1997) (construing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995)). The Supreme Court of Ohio has defined "transaction" as a "'common nucleus of operative facts.'" *Grava* at 382, quoting 1 Restatement of the Law 2d, Judgments, Section 24, Comment b (1982).

{¶38} Turning to the facts of this case, the doctrine of res judicata is likely inapplicable to a substantial percentage of the members of the proposed class because putative class members' FDCPA fair-venue claims do not arise out of the same "common nucleus of operative facts" as class members' alleged debts. Federal

courts applying Ohio law have concluded that, with respect to some types of FDCPA claims, the doctrine of res judicata does not bar a plaintiff from bringing claims in federal court despite the fact that the plaintiff did not raise the potential FDCPA violations during collection proceedings initiated in Ohio state courts. *E.g.*, *Frazier v. Matrix Acquisitions, LLC*, 873 F.Supp.2d 897, 898-899, 903-904 (N.D.Ohio 2012) (though the plaintiff did not bring an FDCPA fair-venue counterclaim in the original debt collection action filed in the Summit County Court of Common Pleas, res judicata did not bar the plaintiff from litigating the claim in federal court); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 796-798 (S.D.Ohio 2006) (res judicata did not bar claims under 15 U.S.C. 1692e and 1692f from being pursued in federal court). Regarding a plaintiff's claim under the FDCPA's fair-venue provision, the court in *Frazier* explained:

> [The plaintiff] certainly could—and should—have raised improper venue as a defense in the underlying [debt collection] action. But * * * the venue defense would not have gone to the validity or collectability of the debt itself. Rather, its effectiveness would have been limited to forcing a transfer of the underlying action to, or a refiling of the underlying action in, the proper venue. * * * [T]he question of proper venue does not share a "common nucleus of

operative fact" with the question of the validity of the debt itself * * *.

(Citations omitted.) *Frazier* at 903-904. A number of additional courts, both in Ohio and in other jurisdictions, have reached similar conclusions with respect to other provisions of the FDCPA. *See, e.g., Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955-958 (7th Cir.1997); *Foster* at 797-798; *Egge v. Healthspan Servs. Co.*, 115 F.Supp.2d 1126, 1129-1130 (D.Minn.2000); *Hughes v. Deutsche Bank Natl. Trust Co.*, N.D. Ohio No. 5:19-CV-00011, 2019 WL 4934507, *7, 10 (Oct. 7, 2019); *Keller v. Hosp. of Morristown*, E.D.Tenn. No. 3:15-CV-581, 2016 WL 6956621, *5 (Nov. 28, 2016). *See also Unifund CCR Partners v. Young*, 7th Dist. Mahoning No. 11-MA-113, 2013-Ohio-4322, ¶ 28-29 ("[A]n FDCPA claim concerns the method of collecting the debt, not whether the underlying debt is valid. Thus, a FDCPA claim does not arise out of the transaction creating the debt[,] * * * [and] [the counterclaim-plaintiff's] FDCPA claim is a permissive counterclaim and not a compulsory counterclaim[.]").

{¶39} In this case, the Midland parties' collection actions against Colvin and the rest of the proposed class were based on class members' alleged use of credit cards, resulting in alleged debts to various credit card issuers, and class members' alleged failure to pay these debts, which the Midland parties had purchased from the credit card issuers who originated the debts. In contrast, the instant action

against the Midland parties is based on the Midland parties' filing of collection actions against class members in allegedly improper venues. In this action, Colvin is not challenging whether class members' alleged debts are valid or collectible; instead, she is challenging the practices that the Midland parties employed when they collected or attempted to collect class members' alleged debts. Therefore, class members' FDCPA fair-venue claims do not arise out of the transactions creating their alleged debts. As a result, regardless of whether the Midland parties obtained final judgments against class members in the underlying debt collection actions, the doctrine of res judicata will not bar class members from pursuing FDCPA fair-venue claims against the Midland parties in this action for the sole reason that class members may have failed to bring FDCPA fair-venue claims against the Midland parties in the underlying debt collection actions. Accordingly, because a great many of the members of the proposed class are likely not subject to the defense of res judicata, the fact that Colvin is not subject to the defense does not render her atypical of the proposed class.

{¶40} Next, we consider the extent to which Colvin's susceptibility to the FDCPA's bona fide error defense makes her atypical of the proposed class. The bona fide error defense is set forth in 15 U.S.C. 1692k(c), which provides:

A debt collector may not be held liable in any action brought under

[15 U.S.C. 1692 et seq.] if the debt collector shows by a

preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

"FDCPA violations forgivable under [15 U.S.C. 1692k(c)] must result from 'clerical or factual mistakes,' not mistakes of law." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 394 (3d Cir.2017), quoting *Jerman*, 559 U.S. at 587.

{¶41} In the instant case, the bona fide error defense does not make Colvin's defenses atypical, at least with respect to a segment of the proposed class. The lead attorney of record who filed the complaint against Colvin in the Hardin County Municipal Court hailed from Midland's in-house legal team. (*See* Doc. No. 8). This same attorney, Kimberly Klemenok ("Klemenok"), filed complaints against at least 50 members of the proposed class. (*See* Nov. 5, 2015 Tr., Colvin's Ex. A). In her deposition, Klemenok described the procedures that Midland's Ohio-based in-house attorneys used to determine where to sue alleged debtors. Klemenok testified that all lawsuits that Midland itself files in the state of Ohio, as opposed to lawsuits filed on behalf of Midland by outside counsel, are filed out of Midland's offices in Cleveland. (Kimberly Klemenok's Feb. 4, 2015 Depo. at 24). There, the process of filing suit against an alleged debtor began with a team of legal specialists that prepared and assembled the documents necessary to file suit. (*Id.* at 39). To determine where to file suit against alleged debtors, the legal specialists

had a spreadsheet identifying zip codes with different venues. A lot of that stemmed from the American Postal Guide to Courts, but also included exceptions, venue exceptions where you cannot determine venue from just the zip code. And if that were the case, they would have to do further investigation.

(*Id.* at 45, 70). If the legal specialists were uncertain about the proper venue in which to file suit against an alleged debtor, they would check the Melissa or Factfinder databases or contact the court. (*Id.* at 45-47, 86).

{¶42} Once this process was concluded, completed lawsuits were then forwarded by the legal specialists to Klemenok. (*Id.* at 39). Klemenok testified that, before filing the lawsuits, she used Midland's internal database, Q-Law, to "review every fact pertinent to the lawsuit, starting with the consumer's address; making sure it's in the correct court * * *." (*Id.* at 40). According to Klemenok, she

[l]ook[ed] at the consumer address in the system. Venue[] [had] already been checked at this point by [the] team of legal specialists trained to check venue and trained in the FDCPA. [She] just look[ed] for things that may [have] be[en] incorrect.

[She] ma[de] sure that the address in the system matche[d] the address in the Complaint. [She] ma[de] sure that the address on the Complaint

[was] complete and that the court line[d] up with the consumer's address.

(*Id.* at 41-42). Klemenok observed that, in making the venue determination, "[a] lot of it [was] just obvious. * * * [I]f you ha[d] one court caption, if [she] file[d] in one county, and [she] kn[ew] that the city is another county, that [was] wrong. [They were] going to reject the suit." (*Id.* at 42). However, she stated that when discrepancies were not obvious, she had to "rely on the people below [her], that the legal specialists follow procedure for checking venue and that [it was] correct." (*Id.*). Finally, though Klemenok was able to describe the procedures used by Midland's internal legal team, she was not able to detail the processes that outside attorneys use to file suit on behalf of Midland. (*See id.* at 56).

{¶43} Throughout the proceedings in this case, Colvin has not contended that the Midland parties intentionally filed suit against putative class members in improper venues. (*See* Doc. Nos. 106, 108). Consequently, the only real issue to be litigated with respect to the Midland parties' possible bona fide error defenses is whether the Midland parties maintain procedures reasonably adapted to avoid filing suit against alleged debtors in improper venues. As suggested by Klemenok's deposition testimony, concerning members of the proposed class who were sued by the Midland parties' in-house legal team, the same process was employed to ascertain the appropriate venue in which to file suit. Therefore, by determining

whether the Midland parties' procedures were reasonably adapted to avoid filing suit against Colvin in an improper venue, the finder of fact will simultaneously determine whether the same procedures were reasonably adapted to avoid improperly filing suit against members of the proposed class who were sued by the Midland parties' internal legal team. Accordingly, Colvin's potential bona fide error defense is not atypical of the bona fide error defenses of class members who were sued by the Midland parties' in-house counsel.

{¶44} However, it is likely that the same cannot be said of the bona fide error defenses that the Midland parties may assert against members of the proposed class who were sued by outside counsel on behalf of the Midland parties. This is because the procedures used to decide where to file lawsuits might differ between the Midland parties' in-house attorneys and the Midland parties' outside counsel. Nevertheless, while the bona fide error defense to which Colvin might be subject may not be typical of the bona fide error defenses to which members of the proposed class who were sued by outside counsel may be subject, this does not necessitate a conclusion that Colvin is completely unable to satisfy the typicality requirement. Rather, under the particular circumstances of this case, it would be appropriate to slightly modify the class definition to include only those alleged debtors sued by the Midland parties' internal legal team working in Cleveland. *See Shaver v. Standard Oil Co.*, 68 Ohio App.3d 783, 796 (6th Dist.1990) (concluding that "the trial court

need not have totally denied certification based upon antagonistic or conflicting interests" in part because it was possible that the class could be redefined to eliminate antagonistic or conflicting interests between the class representative and some members of the class).

{¶45} To summarize, although Colvin is claiming only statutory damages, her claims are not atypical of the claims of class members who may be entitled to both statutory damages and actual damages. Furthermore, the fact that Colvin is not subject to the defense of res judicata does not make her atypical of the class because res judicata is likely inapplicable to many members of the proposed class as well. Similarly, the bona fide error defense that the Midland parties may assert against Colvin is not atypical of the bona fide error defenses that the Midland parties may assert against class members who were sued by the Midland parties' internal legal department. Ultimately, Colvin's FDCPA fair-venue claim arises from the same alleged conduct that gives rise to the fair-venue claims of absent class members, and Colvin's claim is based on the same legal theory. *See Tedrow*, 2007 WL 2688276, at *7; *Holloway*, 1995 WL 736925, at *2. Moreover, at least concerning class members who were sued by the Midland parties' internal legal department, we have been unable to identify any express conflict between Colvin and the class. For these class members at least, Colvin will advance their interests and claims. *Tedrow* at *7 ("The proofs that are required for [the class representatives'] claims to prevail

are those necessary for the putative class to prevail. That is, all interests are advanced by proving that Defendant has a policy and/or practice of bringing civil actions against debtors in violation of federal * * * law."). Accordingly, we conclude that the trial court erred by holding that Colvin completely fails to satisfy Civ.R. 23(A)(3)'s typicality requirement.

{¶46} Finally, we consider whether the trial court erred by concluding that Colvin cannot fairly and adequately protect the interests of the proposed class as required by Civ.R. 23(A)(4). Civ.R. 23(A)(4)'s adequacy-of-representation requirement is "of crucial importance in terms of ensuring due process to members of the proposed class who will not have their individual day in court." *Marks*, 31 Ohio St.3d at 203, citing *Augusta v. Marshall Motor Co.*, 453 F.Supp. 912, 917-919 (N.D.Ohio 1977). "Adequacy refers to the class representative's ability to protect all the members' interests in the action." *Musial Offices, Ltd. v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 99781, 2014-Ohio-602, ¶ 27. "The analysis under [the adequacy-of-representation requirement] is divided into a consideration of the adequacy of the representatives and the adequacy of counsel." *Warner*, 36 Ohio St.3d at 98. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." *Id.*, citing *Marks* at 203. "The representatives' counsel is adequate if the lawyers are 'qualified, experienced and generally able to conduct the proposed litigation.'" *Musial* at ¶ 28, quoting *Helman*

*v. EPL Prolong, Inc.*, 7th Dist. Columbiana No. 2001 CO 43, 2002-Ohio-5249, ¶ 40. In making these determinations, "courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* at ¶ 27, quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) and citing *New Albany Park Condo. Assn. v. Lifestyle Communities, Ltd.*, 195 Ohio App.3d 459, 2011-Ohio-2806, ¶ 53 (10th Dist.).

{¶47} Regarding Civ.R. 23(A)(4)'s adequacy-of-representation requirement, the trial court concluded:

> As stated above in considering commonality and typicality, Colvin's circumstances are significantly different than that of the rest of the proposed class members. This Court agrees with Colvin's legal precedent that differences which are not antagonistic may be deemed adequate, but such significant factual disparities create antagonisms in this particular case. Colvin has not had judgment rendered against her and has not faced the same injuries as the rest of the class. This distinction is significant because the remedies to which she may be entitled are significantly different than those who have already had judgment rendered against them.

Accordingly, Colvin is unable to adequately represent the interests of the class.

(Doc. No. 115).

**{¶48}** As with the commonality and typicality requirements, we conclude that the trial court erred by determining that Colvin cannot satisfy the adequacy-of-representation requirement. In its analysis of the adequacy-of-representation requirement, the trial court only discussed Colvin's supposed inadequacy as class representative; it did not conduct an analysis to determine whether Colvin's counsel is adequate. Therefore, our analysis of the adequacy-of-representation requirement will focus solely on Colvin's adequacy as class representative.

**{¶49}** In its analysis of the adequacy-of-representation requirement, the trial court again erred by concluding that Colvin's injury is not the same injury suffered by the rest of the proposed class. As explained earlier, Colvin and the rest of the proposed class allegedly suffered the same injury when the Midland parties filed suit against them in purportedly improper venues. All of the "factual disparities" identified by the trial court pertain only to differing damages between Colvin and the rest of the class, not differing injuries, and there is no indication in the record that Colvin is unable to fairly and adequately protect the interests of class members with claims to both actual damages and statutory damages simply because she is seeking only statutory damages. *See Petrolito*, 221 F.R.D. at 310.

{¶50} Certainly, the type of relief sought by the proposed class representative for her own injuries is relevant to the determination of whether the proposed class representative can adequately represent the entire class. In some cases, antagonisms may exist between a proposed class representative and members of the class because the proposed class representative does not have an incentive to pursue forms of relief that are most beneficial to certain parts of the class. For example, in *Amchem Prods., Inc. v. Windsor*, the Supreme Court of the United States held that the proposed class representatives did not satisfy the adequacy-of-representation requirement because "the interests of those within the single class [were] not aligned." 521 U.S. 591, 626, 117 S.Ct. 2231 (1997). The court found that for class members currently injured by exposure to asbestos, "the critical goal [was] generous immediate payments" and that this goal "tug[ged] against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.* The class representatives were inadequate because they "achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id.* at 627.

{¶51} Likewise, in *Shaver*, the Sixth District Court of Appeals concluded that the proposed class representative, a former gasoline dealer, could not adequately represent a class composed of both current gasoline dealers and former gasoline dealers against a defendant oil company. 68 Ohio App.3d at 795-796. The

court noted that whereas "current dealers are interested in economic viability of a business and in maintaining an amicable relationship with that business," "[f]ormer dealers are essentially interested in the recovery of monetary damages without regard to the possible adverse impact on the present system." *Id.* at 796. Thus, the proposed class representative, as a former dealer who likely possessed a greater interest in obtaining monetary damages, could not adequately represent the interests of current dealers who were likely more interested in equitable relief. *See id.*

{¶52} Antagonisms like those in *Amchem* and *Shaver* are not present in this case because Colvin's interests are entirely aligned with the interests of the rest of the proposed class. Colvin and the rest of the proposed class all seek a declaration that the Midland parties violated the FDCPA when the Midland parties allegedly filed suit against class members in improper venues and request damages for these violations. *See Tedrow*, 2007 WL 2688276, at *8. Unlike *Amchem* and *Shaver*, where the *form* of the relief sought by the class representative created antagonisms, the relief that Colvin seeks for herself is the same type of relief sought by the rest of the class. Moreover, although Colvin is not entitled to actual damages herself, there is nothing in the record suggesting that Colvin is therefore unable or unwilling to vigorously advance the interests of class members with claims to actual damages or to maximize their recoveries. Thus, we conclude that Colvin is an adequate representative of the proposed class. Because the trial court's adequacy-of-

representation determination was based solely on Colvin's adequacy as class representative, we conclude that the trial court erred by determining that Civ.R. 23(A)(4)'s adequacy-of-representation requirement is not satisfied.

{¶53} In sum, we conclude that the trial court erred by holding that Civ.R. 23(A)'s commonality, typicality, and adequacy-of-representation requirements are completely unsatisfied. Therefore, we conclude that it was unreasonable for the trial court to deny Colvin's motion for class certification on these grounds and that the trial court accordingly abused its discretion. That said, we offer no opinion whether the trial court should ultimately certify the proposed class. As noted above, the trial court's conclusions concerning identifiability, numerosity, and Colvin's membership in the proposed class are not properly before this court for review, and thus, we have no occasion to determine whether the trial court properly decided those matters. Furthermore, the trial court did not determine whether the proposed class meets the requirements of Civ.R. 23(B), and we decline to make this determination in the first instance.

{¶54} Colvin's first assignment of error is sustained.

### Assignment of Error No. II

**Even if Ms. Colvin's claims were not common and typical of class members claiming recovery for actual damages and, therefore, she was not an adequate representative for this subclass, the Trial Court abused its discretion by denying Ms. Colvin's motion for class certification with respect to those class members claiming only statutory damages.**

**{¶55}** In her second assignment of error, Colvin argues that the trial court abused its discretion by concluding that she does not satisfy the commonality, typicality, and adequacy-of-representation requirements with respect to a subclass composed of those claiming only statutory damages. However, because we concluded under Colvin's first assignment of error that Colvin's potential entitlement to only statutory damages, as opposed to both statutory damages and actual damages, does not prevent her from representing the entire proposed class, Colvin's second assignment of error is rendered moot, and we need not address it.

**{¶56}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**