[Cite as *Williams v. Kisling, Nestico, & Redick, L.L.C.*, 2023-Ohio-4510.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MEMBER WILLIAMS, et al.

    Appellees

    v.

KISLING NESTICO & REDICK, LLC, et al.

    Appellants

C.A. Nos.    30602
                  30604

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-09-3928

DECISION AND JOURNAL ENTRY

Dated: December 13, 2023

---

SUTTON, Presiding Judge.

{¶1}  Defendants-Appellants, Kisling Nestico & Redick, LLC ("KNR") and Sam N. Ghoubrial, M.D., appeal from the judgment of the Summit County Court of Common Pleas. This Court reverses and remands for further proceedings.

I.

**Relevant Background**

{¶2}  As this Court explained in *Williams v. Kisling, Nestico, & Redick, LLC*, 9th Dist. Summit Nos. 29630, 29636, 2022-Ohio-1044, ¶ 2-5, 19-20, ("*Williams I*"):

* * *

The instant appeal arises out of a class action lawsuit alleging unlawful business practices by KNR and several healthcare providers. The trial court ultimately certified two classes pursuant to Civ.R. 23, one involving an alleged price-gouging scheme and the other involving an alleged bogus investigation fee charged by KNR.

This matter was pending in the Summit County Court of Common Pleas for several years before the sixth amended complaint was filed with leave of court in 2019. A

number of defendants and claims were added as the litigation progressed over time. In the sixth amended complaint, the named class representatives were Member Williams, Thera Reid, Monique Norris, and Richard Harbour, all of whom were KNR clients who sought treatment from healthcare providers recommended by the firm. The named defendants were Dr. Ghoubrial, Dr. Minas Floros, and KNR, as well as Alberto Nestico and Robert Redick in their capacities as owners of KNR. Dr. Ghoubrial is a medical doctor who operates a pain management clinic. Dr. Floros is a chiropractor who frequently treats individuals involved in car accidents. KNR is a law firm with a large personal injury practice.

The sixth amended complaint alleged three fraudulent schemes perpetrated by KNR.

The first set of claims involved an alleged price-gouging scheme between KNR and certain healthcare providers. Specifically, the plaintiffs sought to pursue claims of fraud, breach of fiduciary duty, unjust enrichment, unconscionable contract, and violations of the Ohio Corrupt Practices Act on behalf of KNR clients who were allegedly charged "exorbitantly inflated prices for medical treatment and equipment provided by KNR's 'preferred' healthcare providers pursuant to a price-gouging scheme by which the clients were pressured into waiving insurance benefits that would have otherwise protected them[.]" The named plaintiffs for these claims were Reid, Norris, and Harbour, in addition to Class A.

* * *

In granting the motion to certify, in part, with respect to Class A, the trial court determined that certain aspects of the alleged price-gouging scheme involved common questions that could be resolved by common evidence in a single adjudication. * * * In regard to the portion of the scheme that alleged a price-gouging arrangement between KNR and Dr. Ghoubrial, the trial court stated as follows:

Evidence was presented that many of Dr. Ghoubrial's patients were administered trigger point injections and sold TENS units and back braces. Evidence was presented that Dr. Ghoubrial substantially overcharged his patients for these items. There was evidence that only Nestico was authorized to reduce Dr. Ghoubrial's bills and the reductions when they were made [were] only a twenty percent reduction. * * * There was evidence presented that although more than 50% of Dr. Ghoubrial's personal injury patients were covered by some form of health insurance, he required the patients to make payments out of the settlement proceeds. It is also undisputed that KNR prepared the letter o[f] protection on Ghoubrial's stationary to insure the payment was made. It is clear that payments made to Dr. Ghoubrial in this manner insured the charges he made would escape scrutiny by the insurance carriers and other government agencies. * * * The argument by Dr. Ghoubrial and KNR that there are no common questions which predominate

because some of Dr. Ghoubrial's patients received a reduction in their charges for these items is not persuasive.

The trial court further found that a class action was the superior method for litigating the claims for Class A as eligible class members would realize no benefit by filing their own separate lawsuits and the cost of such litigation would otherwise be prohibitive. While the trial court acknowledged that there might be some difficulties in the management of the class action, those difficulties were not so burdensome as to deny class certification. The trial court observed that Dr. Ghoubrial's patients who did not receive reductions could form a class and those who did could be placed in a sub-class in accord with the percentage of the reduction.

**{¶3}** In reversing the trial court's decision as to Class A, the price-gouging class, this Court stated:

As the trial court here failed to undertake a rigorous analysis of the requirements of Civ.R. 23(B) with respect to the price-gouging class, this matter must be remanded for the trial court to undertake that analysis in the first instance. *See Midland Funding LLC v. Colvin*, 3d Dist. Hancock No. 5-18-15, 2019-Ohio-5382, ¶ 53. This Court takes no position as to whether the trial court should ultimately certify the proposed class.

*Williams I* at ¶ 37.

**{¶4}** Upon remand, the trial court issued a judgment entry recertifying Class A and identifying a number of potential subclasses. KNR appealed raising three assignments of error. Dr. Ghoubrial appealed raising two assignments of error. We consolidate the assignments of error to facilitate our review.

II.

**KNR ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN RECERTIFYING CLASS A WITHOUT DIRECTLY ADDRESSING THIS COURT'S CONCERNS EXPRESSED IN WILLIAMS I AND INSTEAD DIVIDED THE CLASS INTO MULTIPLE, INCOMPLETE, AND IMPERMISSIBLY VAGUE SUBCLASSES WITHOUT RIGOROUS ANALYSIS AS TO WHETHER EACH SUBCLASSES WITHOUT RIGOROUS ANALYSIS AS TO WHETHER EACH SUBCLASS [INDEPENDENTLY] SATISFIES RULE 23.**

## KNR ASSIGNMENT OF ERROR II

**UNDER ANY THEORY OF LIABILITY, KNR'S LIABILITY FOR THE ALLEGEDLY EXCESSIVE CHARGES OF DR. GHOUBRIAL CANNOT BE DETERMINED BY EVIDENCE COMMON TO ALL CLASS MEMBERS IN A SINGLE ADJUDICATION.**

## KNR ASSIGNMENT OF ERROR III

**THE TRIAL COURT ABUSED ITS DISCRETION IN RECERTIFYING CLASS A BECAUSE IT DID NOT CONDUCT A RIGOROUS ANALYSIS WHEN IT SUMMARILY CONCLUDED THAT DISGORGEMENT WAS AN APPROPRIATE REMEDY.**

## GHOUBRIAL ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN FAILING TO UNDERTAKE A RIGOROUS ANALYSIS OF APPELLEES' CLASS-CERTIFICATION THEORY, DESPITE THIS COURT'S SPECIFIC ORDER ON REMAND PURSUANT TO CIV.R. 23.**

## GHOUBRIAL ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN CERTIFYING CLASS A ("THE PRICE-GOUGING CLASS") ON CLAIMS ONE (FRAUD), THREE (UNJUST ENRICHMENT), AND FOUR (UNCONSCIONABLE CONTRACT) OF THE SIXTH AMENDED COMPLAINT**.

{¶5} In their assignments of error, KNR and Dr. Ghoubrial argue the trial court erred in re-certifying Class A because it failed to follow the prior mandate of the *Williams I* Court to perform a rigorous analysis of the requirements Civ.R. 23(B).

{¶6} A plaintiff bears the burden of establishing the right to a class action by a preponderance of the evidence. *Sliwinski v. Capital Properties Mgt. Ltd.*, 9th Dist. Summit No. 25867, 2012-Ohio-1822, ¶ 12 ("The burden of establishing the right to a class action rests upon the plaintiff."); *Martin v. Servs. Corp. Internatl.*, 9th Dist. Summit No. 20392, 2001 WL 688896, *2 (June 20, 2001) (noting the preponderance-of-the-evidence standard). There are seven prerequisites to class certification, four of which are provided in Civ.R. 23(A) as follows:

(1) [t]he class is so numerous that joinder of all members is impracticable;
(2) [t]here are questions of law or fact common to the class;
(3) [t]he claims or defenses of the representative parties are typical of the claims or defenses of the class; [and]
(4) [t]he representative parties will fairly and adequately protect the interests of the class.

{¶7}     "These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy of representation." *Winrod v. City of Lorain*, 9th Dist. Lorain No. 19CA011503, 2020-Ohio-157, ¶ 4. "In addition to establishing the four prerequisites of Rule 23(A), a plaintiff must also establish one of the three requirements under Rule 23(B)." *Id*. Civ.R. 23(B)(3) "requires a trial court to find that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id*., quoting Civ.R. 23(B). "The requirements under this prerequisite are commonly referred to as predominance and superiority." *Id., see also Duncan v. Hopkins*, 9th Dist. Summit No. 23342, 2007-Ohio-1425, ¶ 8. "Finally, a plaintiff must establish that an identifiable class exists and that its definition is unambiguous, and that the named representatives are members of the class." *Winrod* at ¶ 4. "These prerequisites are commonly referred to as ascertainability and class membership." *Id*. "Failure to satisfy any one of these seven prerequisites results in denial of certification." *Id*. citing *Sliwinski* at ¶ 12. Additionally, "[a] determination by a trial court regarding class certification that * * * suggests that the trial court did not conduct a rigorous analysis into whether or not the prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion." *Setliff v. Morris Pontiac, Inc*., 9th Dist. Lorain No. 08CA009364, 2009-Ohio-400, ¶ 7, quoting *Cicero v. U.S. Four, Inc*., 10th Dist. Franklin No. 7AP-310, 2007-Ohio-6600, ¶ 10.

**{¶8}** In *Willaims I*, this Court addressed deficiencies in the trial court's certification of Class A and directed the trial court to perform a rigorous analysis of the requirements of Civ.R. 23(B). The *Williams I* Court at ¶ 32-36 stated, in relevant part:

\* \* \*

The alleged price-gouging scheme pertinent to Class A was the most elaborate of the three fraudulent schemes set forth in the sixth amended complaint. Although the trial court found that there was no basis to certify the class in regard to the alleged unlawful referral network, it certified Class A with respect to a number of claims pertaining to the portion of the scheme whereby KNR conspired with Dr. Ghoubrial to overcharge clients for medical care with the aim of increasing the value of each client's legal settlement. A careful review of the trial court's journal entry in this matter reveals that it failed to conduct a rigorous analysis with respect to the predominance and superiority requirements as to Class A. Accordingly, this matter must be remanded for the trial court to conduct that analysis in the first instance.

While the trial court carefully identified many of the arguments advanced by the parties with respect to the certification of Class A, it failed to ultimately resolve some of the foremost evidentiary conflicts regarding whether the plaintiffs' claims could be resolved by evidence common to all parties in a single adjudication. *See Cullen* at ¶ 16 (concluding that the rigorous analysis required under Civ.R. 23 "requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met").

Perhaps most notably, the trial court failed to undertake a rigorous analysis of how the plaintiffs could prove liability with common evidence when the evidence showed that the individual class members were not similarly situated with respect to health insurance coverage. One of the core allegations of the price-gouging scheme was that class members were overcharged for medical care compared to what would have been charged had they been able to use health insurance. Many class members who sought treatment from Dr. Ghoubrial did not have health insurance at all. Some members, such as class representative Richard Harbour, maintained health insurance coverage but expressed a preference not to use it for the purposes of pain management treatment. Still other class members were willing to use either Medicare or their private health insurance but were forced not to do so in order to obtain treatment from Dr. Ghoubrial. The trial court made a general finding that KNR and Dr. Ghoubrial conspired to remove insurance companies from the equation so that Dr. Ghoubrial's charges "would escape scrutiny by the insurance carriers and other government agencies." Notably, however, the trial court declined to analyze how the plaintiffs could prove their claims by common

evidence under circumstances where the insurance situations of the individual class members varied.

Furthermore, in addressing the contention by KNR and Dr. Ghoubrial that the plaintiffs could not satisfy the predominance requirement regarding the payment plan because some patients received significant reductions in their charges for medical care, the trial court simply found that this argument was "not persuasive" and cited a number of cases in support of the proposition that individual differences among class members with respect to damages will not defeat class certification. The trial court also suggested that "[Dr.] Ghoubrial['s] patients who did not receive reductions could form a class and those who did could be placed in a sub-class of the price-gouging class representing the percentage of reduction." The Supreme Court has held that "[p]laintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d. 329, 2015-Ohio-3430, ¶ 33. Here, resolution of the plaintiffs' claims with respect to the price-gouging scheme will at a minimum require determinations with respect to whether Dr. Ghoubrial's standardized rates constituted an overcharge for medical care and equipment, the extent to which Dr. Ghoubrial's clinic ultimately accepted reduced payments as satisfaction for each patient's bill, as well as the manner in which KNR attorneys played an active role in facilitating those reductions based on the settlement value of each case in order to perpetuate the scheme. The trial court failed to undertake a rigorous analysis as to whether these issues could be resolved by common evidence in a single adjudication. *See Cullen* at ¶ 30.

Finally, the trial court did not conduct a rigorous analysis when it summarily concluded that disgorgement was an appropriate remedy. In its judgment entry, the trial court stated, "Dr. Ghoubrial would be required to disgorge to the class members the amount of the overcharge. KNR would be required to disgorge the amount of the contingent fee attributable to the overcharges made by Dr. Ghoubrial. For example, if the settlement amount was increased by $4,000.00 in overcharge, and KNR's contingent fee was one-fourth of the recovery, then KNR would have to disgorge $1,000.00 of the fee as to that class member." The trial court's damages formula involves identifying the amount of the overcharge in each class member's case. As discussed above, the calculation of the overcharge would involve a number of considerations. In addition to the fact that not all class members received the same course of treatment, the record suggests that some of Dr. Ghoubrial's patients received little to no reduction in their medical bills while other patients received significant reductions. The trial court did not scrutinize whether the calculation of the overcharge could be established by common evidence in a single adjudication.

\* \* \*

{¶9}    "When a case is remanded to a trial court from an appellate court, the mandate of

that appellate court must be followed." *Kaechele v. Kaechele*, 61 Ohio App.3d 159, 162 (10th

Dist.1989), citing *Nolan v. Nolan*, 11 Ohio St.3d 1 (1984). "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan* at syllabus. "Moreover, the trial court is without authority to extend or vary the mandate given." *Id*. at 4, citing *Briggs v. Pennsylvania RR. Co*., 334 U.S. 304, 306 (1948).

{¶10} Here, the trial court did not follow the prior mandate of this Court. The trial court did not engage in a rigorous analysis of the requirements of Civ.R. 23 (B). Instead, the trial court removed from Class A "any patient or client who did receive a specific reduction of those [medical] bills from Dr. Ghoubrial in the settlement of their lawsuit." The trial court also created vague subclasses to Class A. In so doing, the trial court did not discuss whether any of the named Plaintiffs actually qualify as a class representative for each subclass. Moreover, the trial court did not perform a rigorous analysis of whether Class A as a whole meets the requirements of Civ.R. 23(B), let alone each of its subclasses. Further, as to superiority, the trial court merely stated, "it is unlikely any of the patients of Dr. Ghoubrial or clients of KNR would pursue their own lawsuit to recover the alleged overcharges because it would be prohibitive to do so for amounts so small." *See Schmidt v. Avco Corp*., 15 Ohio St.3d 310, 315 (1984) ("This court is well aware that Civ.R. 23(C)(4)(b) specifically authorizes the court to divide the class into appropriate subclasses. Nonetheless, the requirements for a class action must still be met. Under Civ.R. 23(B)(3), a class action must be superior to all other available methods for adjudication of the controversy and one of the tests of superiority is the manageability of the action."). As to disgorgement, the trial court again concluded it was an appropriate remedy without rigorous analysis regarding whether an overcharge could be established by common evidence in a single adjudication.

**{¶11}** Accordingly, because the trial court must perform a rigorous analysis of the requirements of Civ.R. 23(B), as this Court previously ordered in *Williams I*, and the trial court must address any potential issues regarding class representation, such as ascertainability and class membership, the parties' assignments of error are sustained.

### III.

**{¶12}** KNR's three assignments of error are sustained. Dr. Ghoubrial's two assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for the trial court to perform a rigorous analysis of the class certification requirements.

Judgment reversed,
cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

BRADLEY J. BARMEN, Attorney at Law, for Appellant.

R. ERIC KENNEDY and DANIEL P. GOETZ, Attorneys at Law, for Appellants.

JAMES M. POPSON, Attorney at Law, for Appellants.

THOMAS P. MANNION, Attorney at Law, for Appellants.

PETER PATTAKOS, ZORAN BALAC, and GREGORY GIPSON, Attorneys at Law, for Appellees.